Good morning, and may it please the Court, my name is Peter Oldhan. I'm here with my co-counsel, Alexandra Foote. We represent the plaintiffs and appellants, Nari Suda and Packin Corporation. Now, since this case was fully briefed in April of 2022, there have been a number of additional cases that were decided at the trial courts. And just based on those recent decisions and really the bottom decisions on this issue, I think what the Court needs to decide is whether the presence of a COVID-19 virus can cause physical loss over damage to property. This being a diversity case, it's a question that needs to be decided under Oregon law. And Oregon appellate courts and the Oregon Supreme Court have not specifically addressed this issue. And that's why our position today is that this case, this question needs to be certified to the Oregon Supreme Court so that Oregon courts can have the final word on this key issue. So, counsel, I have one burning question in these two cases, and it is the weight of authority is going strongly against the insurance companies in these issues, not just in the circuit, but suggests that Oregon would come out differently. Well, just because the weight of authority is coming out in favor of the insurers, it doesn't mean that it's necessarily correct. I'm pointing to count my question. What in Oregon law suggests that the answer is different? Well, I think basically there's a factual question as to whether the virus can cause physical loss over damage. I think that question is, that isn't a determination for a judge to make. It's a determination. Sorry, are you conceding then that physical damage is required under the policy and that saying that it is just a factual dispute now about whether the virus causes that kind of damage? Yes, I mean, I think at this point, the policyholders will concede that physical loss or damage likely requires some kind of physical alteration, and I think that's a reasonable interpretation. But at that point, if you need to determine whether there's physical alteration of property, that's a factual question. There are a number of scientific studies that, under which you can conclude that there's a possibility that the virus actually causes damage, and if that's the case, that would trigger coverage for business interruption, loss of business income. And in California, again, if we're looking at the weight of authority, there's now a split in the California appellate courts as to whether the virus can cause physical loss over damage. So I don't think that Oregon needs to determine that this is actually a question that has been decided, and therefore I think every state, the policyholders in the state who are subject to Oregon law should have a chance to to make their case. Council, what is the California cases that you are referring to? There's the Marina Pacific case, which is California Court of Appeal, in which the court said that, found that a case couldn't be decided on demur. It's a different, granted it's a different standard than 12b-6, but essentially the court found that this is a factual question. This court, the Ninth Circuit, has actually certified this exact question in another planet, and therefore I think it would be appropriate for this court to do the same to the Oregon Supreme Court. And also there is the Tarar case, under which, again, the court found that it was error to deny leave to amend when the determiner was stand on this basis. I think, if we're looking at plausibility... Let me ask you, because your allege any losses, I just want to make sure I ask you this, do you allege any losses for rectifying the alleged direct physical loss or damage you suffered from these orders? Well, the thrust of the the complaint was primarily for business income, because that's the maturity of the loss, but I believe the claim that was made under the policy would have included any actual damages, physical loss or damage to property, and so that would include the cost of repair. Do you allege that? I don't remember seeing that. I know we did allege that there was property damage, and the presence of the virus led... Your Honor, it's a little difficult situation, because the case in the district court was pleaded as a class action, and whether those governmental orders, in and of themselves, constituted physical loss or damage, or whether they were entered into because of physical, or they were entered because of physical loss or damage to property. I think, to the extent that there isn't sufficient facts pleaded regarding property damage, and I'm not conceding that that was the case, but if the court were to consider that, I think under 12B6, the policyholder should be granted leave to amend their complaint to make those additional allegations. Let me ask you, under your interpretation, wouldn't nearly all the buildings in the United States have suffered direct physical loss or damage, because nearly all the It's possible, but not nobody's... One, that I don't know if that's necessary, that's not relevant to the question of whether an insurance policy should cover that. The contract is the contract, and just because there could be numerous losses that could potentially bankrupt the industry, it's not the policyholders who put themselves, who put the insurance companies in that position. And also, I think it's manageable because not everyone made a claim. Just because there was physical loss or damage to property, if you didn't make a claim because you didn't think that the property damage was something that needed to be repaired using insurance proceeds, or if you didn't lose business income, then you didn't need to make a claim. But in this case, we're representing a policyholder who did actually suffer losses, and I think that should be the issue before the court today. Cases talk about when property damage occurs, there's a need for repair, rebuilding, or replacing. You don't allege anything specifically about any of those things needing to have occurred in these properties, and why can't we just accept our understanding of how COVID has gone, we've all lived through it, and property hasn't necessarily needed to be repaired, rebuilt, or replaced? Well, I don't, I think you're right, Your Honor, that the complaint as pleaded doesn't have details as to how the property could be repaired, remediated, or replaced. I do think that the complaint can be amended to make those allegations if needed. This complaint was filed in 2020, and I think the understanding about, our understanding of how the virus operates has changed since then. I do think, for example, if wiping it down isn't sufficient, according to several articles that are cited, and therefore to the extent that, say, the silk banquets at one of the restaurants need to be replaced because the virus can't be removed, I think that would be a physical loss over damage, and that would be, there would need to be a replacement of that property in order to operate the restaurant safely. So I do think that a plausible claim could be pleaded, and if it's not, it hadn't been pleaded in the original complaint, the plaintiffs should have had the opportunity to amend their complaint in order to make those allegations. One of the factors that we're supposed to consider in determining whether to certify a question to the Oregon Supreme Court is that court's caseload. Do you have any information on that factor that we should consider? I don't know what, I don't have specific knowledge of that, but I do think that as far as certification, this is an important enough question that I think it would be worth at least requesting that the Oregon Supreme Court take it up, and I think we can leave it in the hands of that court to decide whether it's a question that they would like to answer. I think there's enough policyholders, and this is an important enough question that I think there's a very good chance that the Oregon Supreme Court would take up this question. Counsel, at this point, what question would you certify? Because you seem to have conceded that the direct physical damage or loss requires some kind of physical alteration. Are you still saying we should certify that question, or is there a different question that you would say? I would say that it should be similar to the question that was certified to the California Supreme Court in another plan. The question is whether it's possible for the COVID-19 virus to cause physical loss of or damage to property. I think it's a narrow enough question, and the answer to that question will essentially inform a lot of these cases involving the business interruption losses caused by the COVID-19 closures. Let me just ask one more question. Do you know of any current Oregon State cases pending on this issue that might eventually go to the Oregon Court of Appeals? I don't know any offhand, so I can't really say as to whether there are any cases coming up through the Oregon State courts that would address this question. All right. Thank you. Thank you, Your Honor. My name is Clark Holland. I represent Oregon Mutual in this case. The COVID business interruption litigation is perhaps the most litigated thing in the last three years across the nation. I think what's remarkable is the consistency across the courts regarding this issue. In every single circuit court of appeal that's addressed the issue, and I think now all of them have, they have all ruled in favor of the insurance company in various levels, including that the presence of COVID, even if it drops onto a surface, is not sufficient to create loss and damage to trigger business interruption coverage. I would point out that this case, Nari Suda, was handled by Judge Hernandez as a companion case to the Dakota Ventures case at 53 F. Sept. 3, 848, and Judge Hernandez in that decision went out of his way to describe that even the presence of COVID would not trigger business interruption coverage. Because there's simply nothing that needs to be done. More importantly, even if you did something, it wouldn't have changed the impact of the orders, right? The orders applied regardless of whether or not anyone discovered COVID-19. No one ever inspected Nari Suda or any other restaurant to determine whether or not there was COVID there. More importantly, essential businesses, which included restaurants, but more importantly, every grocery store in America, people were in and out of every single store, and remarkably, none of them were closed because of the presence of COVID. Nari Suda is currently open seven days a week, every single day, even though COVID is out there, it's present, it's maybe more transmissible now than it was before, and yet no one's claiming that it's causing any loss and damage. I would point out that the period of restoration in the policy that Oregon Mutual issued, it has a time element deductible. The period of restoration doesn't start until 72 hours after the alleged physical loss and damage. Why? Because in most small restaurants, it would be unaffordable if the period of restoration began the moment of the loss, because some trivial losses can be repaired in 20 minutes or a day, so you don't even get coverage until the loss is so serious that you have been out of business for at least three days. So if someone breaks a window or tries to break into a door, the insured is responsible to do that repair in that 72 hours, and it doesn't trigger coverage. Mr. Roldan made a reference to possibly amending his complaint, so I wanted to ask. Let me point out that he didn't brief that issue, right? He didn't even try in his briefs to this court to say what he could do, but I want to emphasize that this was the third complaint that Nari Suda filed. Nari Suda first filed this case in the Northern District of California. We filed a 12B6 motion. Nari Suda amended their complaint. We filed a second 12B6 motion, and before that was heard, Nari Suda dismissed that case and decided to refile here in Portland. So this is the third complaint that they have filed. They've had plenty of time to amend to address those issues, and yet they didn't, and they didn't even try to convince Judge Hernandez that there was something they could say that would have triggered a difference under Oregon law. But can you still answer the question, though? If they had alleged damages that rectified physical damage or loss of its property, would that have made a difference? It clearly wouldn't have to Judge Hernandez, who spoke directly to that issue in the Dakota Ventures case. He said that even if the court construed the pleadings to sufficiently allege the presence of COVID, its argument for coverage fails. And then the court goes on to describe how the characteristics of the building itself rendered it—no characteristic of the building itself rendered it unsafe to occupy or required plaintiffs to make repairs to make the building safe to occupy. That's exactly the case here. In the orders in California, every restaurant was encouraged to maintain takeout business or delivery business. No restaurant was required to physically close their premises. Employees were allowed to come and go as they needed. The orders even said that they didn't have to observe the six-foot social distancing if it was necessary for the restaurant not to in order to run its business. And as the court knows, in a restaurant, most kitchens are so small that six feet separation would have been almost impossible. If COVID was doing something to the pots and pans or the tables or anything else that was dangerous or required repair, no one said a word about that. No order said that any of these restaurants had to do anything to their premises to make them safe. And when the orders were lifted, there was no requirement upon lifting those orders that anyone do anything. Again, remarkably, every Fred Meyer and Whole Foods and Trader Joe's all across Oregon and California and Washington remained open every single day without having to do anything. They didn't have to wipe off the cans or the displays or anything else. So this argument that the presence of COVID is somehow triggers business interruption is belied by the fact that no repair was ever required by anyone to do anything. On that point, I think there may be a couple of district courts who've said the contrary. Are you aware of any appellate court, state or federal, that has said that the presence of COVID is a physical loss or damage? No. A couple of courts in California have said that it overcomes the Demurr, the Marina Pacific case that counsel talked about. Specifically in that case, they alleged that they had to destroy their property because it was so damaged. Well, there's no such allegation here. But the court was very careful to say that it was not deciding that the presence of COVID caused anything. It was simply saying that on the Demurr standard in California, they pleaded enough to get by. Well, again, I will also say that there are specific cases which I sent to this court that said that that isn't the standard in California. So we have a disconnect there. But again, it's important to remember that if a virus was causing damage to the table or chairs or anything else, this has been going on forever, right? Every time someone walks into any place and coughs or sneezes, it could be the cold, it could be the flu. Remarkably, no one's ever said that any of that has ever caused any physical damage to anything. So this idea that COVID is somehow now remarkably different, there's no facts to support that allegation. But counsel, why shouldn't we certify? I mean, Washington ultimately answered the question. I mean, this is a state law question. So Washington ultimately answered the question, I think, in Hill versus Stout or Hill and Stout. This presence of COVID is probably the trickiest question in this whole bundle of issues. California is now going to answer that question. Why shouldn't we let Oregon answer the question for itself? I would say that there's simply nothing in Oregon law that suggests that the Oregon Supreme Court would look at this any differently than every single federal district court in Oregon. Every single one of them has followed Judge Hernandez's Dakota Ventures opinion. So all of these district courts in this state have said there's no coverage, that the presence of the virus does not create physical loss and damage. You would think that at least one federal district court or one Oregon Court of Appeal would have said something about this subject to suggest that they would follow such a rule, but they haven't. When you say Oregon Court of Appeal, that's what I'm asking. Is there anything right now percolating up? I know of no case that exists. I simply don't. Your time's about to end. If I could ask you a question regarding the civil authority provision. Are the restaurants here entitled to coverage under the civil authority provision? The only way that they would be entitled to civil authority coverage is if something physical happened in the surrounding neighborhood that prevented access to the building. Well, of course, that isn't true because throughout the pending pandemic, everyone could go everywhere they wanted, right? It didn't block you from going into Nari Suda to pick up food. It didn't block Nari Suda from fixing food or selling food. And is there any case law out there that interprets a prohibit in the civil authority provision, either Ninth Circuit or Oregon case law? I would say that the Mud Pie case and others address those issues. And again, the civil authority and the extra expense coverage, all of them require direct physical loss and damage. Every single one of those coverages is triggered by that. So in the civil authority case, you would have, say, a building next door to Nari Suda that burnt down, and there were tape around the block that said you can't go to Nari Suda because the neighboring building burnt down. That didn't happen here.  Thank you, Your Honor. Thank you very much. I give you one minute for rebuttal. Thank you, Your Honor. I just want to point out that the Oregon District Court, in all its wisdoms, should not be the final arbiter of this question. Essentially, if this court were to follow Dakota Ventures, that would make the district court who decides law. If we're also talking about the factual question of whether the restaurants are closed, just because Nari Suda was able to offer takeout doesn't mean it didn't suffer a slowdown in its business. The policy provides coverage for any slowdown, not necessarily a complete shutdown. So the fact that they weren't able to use their dining room, for example, or the fact that Kin Cow was completely closed because the hotel around it was closed, there are actual closures and loss of property that resulted because of the presence of the COVID-19 virus. And I believe that it could be proven at the trial court level if given the opportunity. Thank you for your time. Thank you both for your oral argument presentations. The case of Nari Suda LLC v. Oregon Mutual Insurance Company is submitted.
judges: MURGUIA, FORREST, SUNG